# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NATASHA BLUEBERRY, et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) CIV-13-278-R |
| COMANCHE COUNTY FACILITIES AUTHORITY, a/k/a COMANCHE COUNTY DETENTION CENTER, d/b/a COMANCHE COUNTY JAIL, | ) ) ) ) ) |
| Defendant. | ) ) |

## ORDER

This matter comes before the Court on five separate motions for summary judgment, filed by Defendant, Comanche County Facilities Authority ("the Authority"), a/k/a Comanche County Detention Center ("CCDC"), addressing the claims of the various Plaintiffs, all of whom were detained in the Comanche County Detention Center during 2011 and allege they were subjected to sexual assault at the hands of a jailer, Lamont Rainwater, or other inmates with the cooperation of Rainwater. Plaintiffs have responded in opposition to the motions. Having considered the parties submissions, the Court finds as follows.[1]

Although Defendant filed separate motions for summary judgment with regard to each Plaintiff, the Court finds that resolution will be most expeditious with entry of a single order

---

[1] At the outset the Court notes that Defendant repeatedly utilized briefing by incorporation, allegedly premised on Federal Rule of Civil Procedure 10(c). This reliance was inappropriate. Rule 10(c) provides that "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." Motions, however, are not pleadings. Rule 10 does not contemplate briefing by incorporation and Defendant's method increased the Court's workload by making it difficult to fully consider a single set of briefs by referencing other briefs, which in turn incorporated a third brief.
  With regard to Plaintiffs' response briefs, to the extent Plaintiffs have failed to comply with Local Civil Rule 56.1(d) by failing to cite to evidence to contradict the Defendant's numbered uncontested fact, the fact is deemed admitted pursuant to Rule 56.1(e).

that can address the issue that exists in each of their cases, whether Defendant is entitled to summary judgment on Plaintiffs' claims that the CCDC violated their constitutional rights. Plaintiffs concede Defendant's contention that it is entitled to summary judgment as to their claims arising under state law, and accordingly, Defendant's motion is granted with regard to the state tort constitutional claims.

"'The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Ribeau v. Katt*, 681 F.3d 1190, 1194 (10th Cir. 2012) (quoting Fed.R.Civ.P. 56(a)). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir.2013) (internal quotation marks omitted). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (alteration and internal quotation marks omitted); *see also Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir.1998) ("If the movant carries this initial burden, the non-movant may not rest upon its pleadings, but must set forth specific facts showing a genuine issue for trial

as to those dispositive matters for which it carries the burden of proof." (internal quotation marks omitted)).

Common to each Plaintiff was Lamont Rainwater, who was hired as a detention officer at the CCDC on February 23, 2011, after receiving an honorable discharge from the United States Army. The parties agree that there is no evidence of anything in Mr. Rainwater's background that would have given Mr. Cagle or Officer Gossen, the chief of security who actually hired Mr. Rainwater, pause with regard to his background or qualifications.[2] Mr. Rainwater, however, was allegedly responsible for either sexually harassing or assaulting, or permitting inmate/trustees to sexually assault each of the named Plaintiffs as will be set forth in more detail below.[3]

Plaintiff Natasha Blueberry was booked into the Detention Center on March 25, 2011, and released to the custody of Oklahoma County on March 30, 2011. While at the CCDC, she was housed in cell 123 on the first floor in the booking area. She alleges that on March 26, 2011, she was taken by Rainwater to a shower area, in the corner of the booking area, and that while in that area she was sexually assaulted by Rainwater and two male inmate trustees. She alleges the same thing happened two more times in her four days at the CCDC, on March 27 and 29, 2011, at approximately the same time of day and involving the same guard and trustees. After the first assault, Plaintiff Blueberry alleges that she attempted

---

[2] Mr. Rainwater died in a car accident, which apparently occurred shortly after he was removed from his duties at the CCDC, and during an apparent attempt to elude police.

[3] Certain of the Plaintiffs allege sexual assault or harassment by other employees of the CCDC as well. Mr. Rainwater's involvement was common to all Plaintiffs.

to get the attention of an unidentified female officer working in the booking area, yelling that she had been raped. Ms. Blueberry contends the officer acted as if she did not understand. Plaintiff Blueberry did not inform anyone else of what occurred until after her release from the CCDC and after Plaintiff Griggs made her allegations.

Plaintiff Karen Thrash was incarcerated at the CCDC from March 25, 2011 until August 3, 2011, absent between July 20 and July 25 while in federal custody. Her allegations relate to her confinement on the third floor. She asserts that officer Rainwater and another detention officer made multiple requests for her to expose her breasts. She testified that Officer Rainwater demanded that she remove her clothing and masturbate while he watched from the catwalk in exchange for providing her with a telephone number she had requested. He thereafter entered her cell and raped her. A few days later he entered her cell and again assaulted her. She testified that she believed other inmates might be aware of the assaults, but she never reported them because she was unsure who to tell. She also alleges she was subject to degrading and inappropriate comments during strip searches and that male guards watched while she was strip-searched upon her return from federal custody.[4]

Plaintiff Lamara Glaze was incarcerated at the CCDC from January 13, 2011 until June 1, 2011 in various locations on the third floor. She alleges she was subjected to verbal assaults and harassment from Detention Officers Rainwater, Morris, Brown, Chewning, and

---

[4] Included in Plaintiff Thrash's deposition testimony is reference to an unreturned request to staff. The Court is unable to discern from the testimony what the request to staff listed as the issue, that is did it complain about the alleged sexual assault or some other transgression and to whom it was addressed and to whom it was presented. As such, her testimony that "I think I did one time, but I never – I just had to write it on a request to staff and I never got it back" is of limited value.

Rasco. She contends these statements were made to her in person and over the intercom and included explicit language and sexual requests. She also alleges that officer Rainwater exposed himself to her, raped her and her cellmate, and that she was sexually assaulted by detention officer Angus Moore. She contends she complained about a female officer, Ms. Fraze, staring at her while she bathed in the sink.[5]

Plaintiff Jessica Reese was detained at the CCDC from May 20, 2011 until May 24, 2011, in cell 123 in the booking area. She alleges she was asked by Officer Rainwater to expose her breasts in exchange for a blanket. She also asserts that she was sexually assaulted by two inmate trustees on the first day of her four days at the center, who had assistance from Officer Rainwater, who rather than interceding, aided the assaults by providing each of the trustees with a condom.

Plaintiff Dana Griggs was incarcerated at the CCDC from July 16, 2011 to November 23, 2011 in the booking area, cell 123. She testified that she was sexually assaulted by Rainwater as well as by two inmate trustees, Wooden and Shaver, in the presence of officer Rainwater, after he permitted them to gain access to her cell. Plaintiff Griggs complained to employees of the CCDC which led to the suspension of officer Rainwater pending investigation by the OSBI and ultimately this litigation.

As a preliminary issue, in each motion Defendant argues that detention officer Rainwater was not acting under color of state law when he committed the variety of sexual

---

[5] Plaintiff Glaze makes an allegation of rape against Mark Brown, however, the rape is alleged to have occurred after her release from the CCDC.

offenses alleged by Plaintiffs. With regard to Plaintiff Glaze, Defendant raises the same issue as to officers Angus Morris and Mark Brown. Defendant contends that because these officers were not acting under color of state law, it is entitled to summary judgment because the underlying claims arise out of their involvement in the alleged sexual assault of the Plaintiffs. The Court disagrees.

There is no legal or factual basis for concluding that Mr. Rainwater, Mr. Morris or Mr. Brown were not acting under color of state law at the time one or more of the men allegedly sexually assaulted or permitted the assault of one or more of the Plaintiffs.

> "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " *West v. Atkins*, 487 U.S. at 49, 108 S.Ct. 2250 *(United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941)). "The authority with which the defendant is allegedly 'clothed' may be either actual or apparent." *Jojola v. Chavez*, 55 F.3d at 493. Accordingly, at a base level, to find that an action was taken under color of state law, the court must find that "'the conduct allegedly causing the deprivation of a federal right' must be 'fairly attributable to the State.'" *Gallagher v. Neil Young Freedom Concert*, 49 F.3d at 1447 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)).

*Pena v. Greffet*, 922 F.Supp.2d 1187, 1218-19 (D.N.M. 2013). Where, as here, the employee was on duty, serving as a detention officer at the time he sexually assaulted or permitted the sexual assault of a Plaintiff, and the assaults occurred while he was, at least pretending, to perform his duties, the employee was acting under color of state law. But for each man's position as a detention officer for the CCDC he would have had no access to or authority over the women he allegedly victimized or permitted others to victimize. Defendant is

6

accordingly not entitled to summary judgment on this basis. The Court therefore turns to the issue of whether Defendant has established the absence of any genuine issues of material fact with regard to the potential for liability of the Authority.

The Authority cannot be held liable on a theory of *respondeat superior*. That one or more of its employees may have harmed a Plaintiff is not sufficient to establish its liability. Rather, each Plaintiff must ultimately demonstrate (1) the existence of a policy or custom by which she was denied a constitutional right and (2) that the policy or custom was the moving force behind the constitutional deprivation (i.e. that "there is a direct causal link between the policy or custom and the injury alleged"). *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010).

> A municipal policy or custom may take the form of (1) "a formal regulation or policy statement"; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'"; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."

*Id.* (citations omitted). It appears to the Court that Plaintiffs are pursuing relief under a theory that the employees of the CCDC were not adequately supervised, which was the result of the deliberate indifference of the final policymaker for the CCDC, Dale Cagle. Defendant does not dispute that Cagle was the final policymaker for the Authority with regard to the Detention Center during the relevant time period.

7

> Under this standard, "an official or municipality acts with 'indifference if its conduct (or adopted policy) disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." [*Berry v. City of Muskogee*, 900 F.2d 1489, 1496 (0th Cir. 1990)]. Deliberate indifference requires "a higher degree of fault than negligence, or even gross negligence." *Id.* at 1495 (citing *City of Canton v. Harris*, 489 U.S. 378, 388 & n.7 (1989)). The "mere fact that an assault occurs ... does not establish the requisite indifference to a prisoner's constitutional rights." *Hovater v. Robinson*, 1 F.3d 1063, 1066 (10th Cir. 1993) (quoting *Zatler v. Wainwright*, 802 F.2d 397, 403 (11th Cir. 1986)). Actual knowledge of an excessive risk is not required. Imputation of constructive knowledge in this case requires a showing that "the underlying unconstitutional misconduct was 'so widespread or flagrant that in the proper exercise of its official responsibilities the governing body should have known of [it].' " *Jojola v. Chavez*, 55 F.3d 488, 491 (10th Cir. 1995).

*Kocsis v. County of Sedgwick*, 2016 WL 1255593, *12 (D.Kan. Mar. 29, 2016).[6] "In a 'narrow range of circumstances,' however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations." *Pulsipher*, 143 F.3d at 1307-08 (citations omitted). The basis for Plaintiffs' claims is the failure to supervise. In order to prevail each Plaintiff must show there was an obvious risk that an inmate would be sexually assaulted by a guard or by another inmate with the assistance of a guard, and that the Authority, through Cagle, failed to act to prevent predictable violations of their

---

[6] The underlying constitutional right at issue is the right to constitutionally adequate safety under either the Eighth Amendment or the Fifth and Fourteenth Amendment. The status of the Plaintiffs, that is whether pretrial detainee or post-conviction is not clear. Although the amendment may be different, the same standard applies. *See Lopez v. LeMaster*, 172 F.3d 756, 759 n. 2 (10th Cir. 1999).

8

constitutional rights. *Id.*

Plaintiffs argue the Authority is liable because Dale Cagle consciously chose to disregard the CCDC's policies, particularly those addressing inmate sexual assault complaints and the supervision of new employees. The Plaintiffs housed on the first floor of the CCDC premise their arguments on the fact that Dale Cagle knew the booking area had blind spots with regard to cameras and that he did not procure additional cameras until after these events. Those Plaintiffs who were assaulted on the third floor argue that Cagle failed to enforce his own policy of excluding male guards from the floor where females were housed. Each Plaintiff argues that Cagle's failure to perform performance appraisals on Rainwater or any other guard during his tenure supports a finding of deliberate indifference as well.

Plaintiffs rely primarily on two cases from the Tenth Circuit Court of Appeals, *Gonzales v. Martinez*, 403 F.3d 1179 (10th Cir. 2005), and *Tafoya v. Salazar*, 516 F.3d 912 (10th Cir. 2008). The Court disagrees with Plaintiffs' contention that this case is indistinguishable from that presented to the court in *Gonzales* and *Tafoya*. Although Plaintiffs characterize Jail Administrator Cagle's attitude as lackadaisical, a term used by the court in *Gonzales* when it reversed the summary judgment granted to the defendants, the undersigned finds the factual background in those cases distinguishable.

*Gonzales*, like the instant action, was premised on sexual assault. Two females alleged assault by separate detention officers, including the jail administrator, on a single day. The sheriff, Salazar, was rarely present at the jail and the inmates were granted what could be

described as "free rein" over the premises. On more than one occasion drunk inmates were found inside the control room with access to the controls in the presence of staff members, including one of the officers, Dominick, who was alleged to have sexually assaulted an inmate. Staff members permitted assaults by inmates upon other inmates. Dominick had been arrested for assault at a local bar for harassing dancers, and attempted to assert his position as a detention officer at that time. The sole discipline imposed was a written warning that covered a myriad of transgressions in which Dominick had engaged. Furthermore, despite the fact that the accused men were the jail administrator and a detention officer, the sheriff did not remove the women from the facility or otherwise attempt to protect them when they complained. Rather, they were left for nearly a day in the custody of the men accused of sexually assaulting them. The jail administrator attempted to assault his victim a second time during this delay. The Tenth Circuit found the sheriff's immediate response indicative of his lackadaisical attitude. Additionally, prior complaints by inmates were virtually ignored by the sheriff, who dismissed the complainants as troublemakers and the sheriff was well aware that the jail administrator admittedly had no interest in investigating allegations of staff misconduct.

*Tafoya v. Salazar*, 516 F.3d 912 (10th Cir. 2008), involved the same facility and same sheriff as *Gonzales*. The plaintiff therein was sexually assaulted by a jailer on more than one occasion, three years after the allegations in *Gonzales*. The 1998 assaults provided the sheriff with notice of the dangerous jail conditions and the court concluded that

> [g]iven his knowledge, Sheriff Salazar was under a duty not

> only to take reasonable measures to remedy the circumstances that directly led to the sexual assaults, but to cure his own lack of attention and unresponsiveness to inmate complaints and other indicators of serious problems with his detention staff.

*Id.* at 917.

Here, however, the evidence prior to the assaults involving Mr. Rainwater does not involve "egregiously undisciplined behavior of the detention staff" at the CCDC. *Id.* Furthermore, none of the evidence cited by Plaintiffs, including the report issued by Plaintiffs' expert, establishes that Dale Cagle was presented with an obvious risk of constitutional harm that would inevitably result in the type of injury any Plaintiff suffered. The record reflects three potentially relevant instances involving different staff members, none of which provides a basis for the conclusion that absent changes at the CCDC a rape or rapes would "almost inevitably result." *See Hollingsworth v. Hill*, 110 F.3d 733, 745 (10th Cir.1997) ("[A] local government policymaker is deliberately indifferent when he deliberately or consciously fails to act when presented with an obvious risk of constitutional harm which will almost inevitably result in constitutional injury of the type experienced by the plaintiff.")(internal quotation marks omitted).[7] In February 2007, there was an alleged consensual sexual relationship between inmate and jailer. Although such a relationship would be illegal under Oklahoma law, if truly consensual it would not violate the Eighth Amendment. *Graham v. Sheriff of Logan Cnty.*, 741 F.3d 1118, 1123 (10th Cir.2013)

---

[7] There is no evidence that prior to Dana Griggs' complaint in July 2011 that Dale Cagle or any other member of administration at the CCDC had notice that Mr. Rainwater had engaged in any of the alleged activity. The only alleged attempts at providing notice were Ms. Blueberry's unsuccessful attempt to give notice to a female guard and Ms. Thrash's belief that she might have filed a request to staff.

(consent to sex is a complete defense to an excessive force claim). The officer involved, Hollars, was terminated. In June 2009 it was discovered that a male and female detainee were engaging in consensual sexual activity, facilitated by employees of the CCDC who gave the male inmate access to the female's cell. An investigation was apparently conducted and the officer involved resigned. Finally, in December 2009, a sergeant at the CCDC reported that detention officer Killen, who had been employed since October 28, 2009, asked an inmate to expose her breasts. Upon investigation an inmate indicated that Killen had made many inappropriate sexually suggestive comments. A second inmate indicated the same. Killen was terminated as a result of the incident.[8]

The Court concludes that with regard to the failure to eliminate any blind spots in the booking area, where Plaintiffs Blueberry, Reece and Griggs allege they were raped, Plaintiffs have presented no evidence that the absence of cameras presented an obvious risk that it was very likely that not having cameras would result in violation of a prisoner's constitutional rights. *See Kocsis*, 2016 WL 1255593 at *12 ("Absent evidence to the contrary we assume that jailers will not violate models of social decorum or otherwise commit a punishable offense.")(quoting *Whitson v. Stone Cty. Jail*, 602 F.3d 920, 927 (8th Cir. 2010)).

The same holds true with regard to the complaints of the two Plaintiffs assaulted while

---

[8] Plaintiffs contend that under Mr. Cagle allegations by inmates regarding improprieties of detention officers were not given credence. There is evidence to the effect that in 2009 Sergeant Chewning did not include certain inmate allegations in the disciplinary proceedings against officer Killen because the allegations came from inmates. The undisputed evidence, however, is that officer Killen was terminated as a result of his request over the intercom that female inmates expose their breasts. Sergeant Chewning authored a statement indicating that in his opinion the allegations were plausible. Furthermore, there is no evidence of a single instance of alleged impropriety with regard to staff and inmate interactions where the employee retained his position.

detained on the third floor of the CCDC, Glaze and Thrash. The court addressed a similar issue in *Hovater v. Robinson*, 1 F.3d 1063 (10th Cir. 1993). Ms. Hovater sued the sheriff alleging a failure to train and supervise, which she contended resulted in her being sexually assaulted by a detention officer. The assault occurred when, in violation of more than one policy of the Sedgwick County Jail, a male officer, without the presence of other officers, supervised the female inmate. The court stated:

> Under the facts alleged by Ms. Hovater, we must determine whether Sheriff Hill disregarded an obvious risk to the safety of female inmates by allowing a single male guard to have custody of a female inmate absent any indication that the guard would assault her. The district court framed the issue in the same way. "The issue is not whether Sheriff Hill and Sedgwick County had notice of prior incidents of sexual misconduct between Robinson and female inmates. Rather, the issue is that Robinson frequently had sole custody and care of unsupervised female inmates." Aplt. App. at 151. Thus, in order to determine that a constitutional violation could have occurred, we must conclude that a male guard having sole custody of a female inmate creates such a risk to her safety that it constitutes a violation of the Eighth Amendment's cruel and unusual punishment clause. We are unable to do so.

*Id.* at 1066. The court concluded that the plaintiff had failed to establish a constitutional violation, noting that "to find a harm present in these circumstance would, in effect, require the conclusion that every male guard is a risk to the bodily integrity of a female inmate whenever the two are left alone. There is absolutely no evidence in this record to support that conclusion." *Id.* at 1068. The Court concludes the same holds true in this case. The mere fact that male guards directly supervised female inmates is not sufficient to establish that the risk

of harm was apparent.[9]

With regard to Cagle's failure to complete performance appraisals of newly hired employees following 90 and 180 days of employment, or at all, Plaintiffs have failed to establish how failure to follow such a policy caused any of the incidents herein. The mere fact that performance appraisals were not completed provides an insufficient basis from which the Court can conclude that Mr. Cagle was deliberately indifferent and that such indifference led to the violation of any Plaintiffs' constitutional rights for which the Authority can be held liable. Although the court noted the absence of such reviews in *Gonzales* and *Tafoya,* the facts of both of those cases presented, as noted above, a hands-off approach by the sheriff, an absence of appropriate discipline and an atmosphere of lawlessness within the detention facility.[10] The Court concludes that the evidence herein does not, as Plaintiffs argue, place this case on par with or worse than the scenarios presented by those cases.

As is apparent from the evidence, the CCDC had at least one rogue employee and perhaps others. However, the Court finds the evidence insufficient under extant authority, that Defendant's policies or lack of policies were a driving force behind the nightmare of events alleged by Plaintiffs.

---

[9] During the relevant time period the CCDC had policies that protected inmates from threats, intimidation and physical harm, and sexual harassment. The personnel policy prohibited sexual contact of any kind between staff and inmates.

[10] To the extent Plaintiffs rely on the OSBI Report entitled "Interview of April Deenae Neville," their reliance is misplaced. The statements contained therein are hearsay to the extent Ms. Neville informed the OSBI agent that during her first tenure at the CCDC rumors of officers engaged in sexual activity was inmates were rampant. Certain other allegations in the statement are too vague as to provide support for Plaintiffs' allegations given that Ms. Neville worked at the CCDC at two different times, only one of which is relevant to this case.

Having considered the totality of the evidence presented by the parties in all five motions for summary judgments, as well as the responses and replies thereto, the Court finds that there are no disputed genuine issues of material fact, and construing the facts in favor of the Plaintiffs, that Defendant is entitled to summary judgment. Plaintiffs have failed to establish deliberate indifference by an official with policymaking authority as required to establish liability of the Comanche County Facilities Authority. As such, Defendant's Motions for Summary Judgment [Doc. Nos. 164, 165, 166, 167, and 168] are hereby GRANTED.

IT IS SO ORDERED this 28th day of April, 2016.

*David L. Russell*
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE